IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SANTA MARIE VIA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-cv-00047-GEC |
| COMMUNICATIONS CORPORATION OF AMERICA, INC. and STEPHEN R. FISHER, | ) |
| Defendants. | ) |

## OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiff Santa Marie Via ("Via"), by counsel, states the following in opposition to the Partial Motion to Dismiss of Defendants Communications Corporation of America, Inc. ("CCA") and Steven R. Fisher ("Fisher") (collectively "Defendants"):

## INTRODUCTION

Count II of the Amended Complaint seeks relief against both Defendants for retaliation prohibited by the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 1223(a) and (b). Both Defendants argue that Via's retaliation claim is barred because Via failed to exhaust her administrative remedies. But where, as here, the alleged retaliation was in response to the plaintiff's initial charge to the United States Equal Employment Opportunity Commission ("EEOC") and subsequent pursuit of that charge through litigation, there is no requirement that the plaintiff file a new EEOC charge to address the retaliation.

Fisher argues that he cannot be held individually liable for retaliation. But Via alleges that Fisher so dominates the hiring, disciplinary, and firing processes within CCA that his actions are

effectively indistinguishable from those of CCA. Under these circumstances, Fisher can be held individually liable.

Count III of the Amended Complaint asserts a claim of defamation *per se* against Fisher. Fisher argues that Via fails to state a cause of action for defamation because Fisher's allegations that Via committed arson against CCA were mere expressions of opinion, and therefore not actionable. But because Fisher's statements falsely implied the existence of an objective, verifiable fact—that Via committed the crime of arson—they are actionable as defamation.

Finally, Fisher argues that Via has not alleged sufficient facts to support an award of punitive damages for defamation. But the allegations in the Amended Complaint support an inference that Fisher intentionally or recklessly made allegations that Via committed a serious crime which, if true, had the potential to cripple Via's future employment prospects. Moreover, the Amended Complaint alleges that once Fisher understood that the recipient of his false allegations knew that Fisher was referring to Via, he did not retract them, or even simply stop talking. Instead, he doubled down and made additional statements ratifying and amplifying the initial allegations. Via has accordingly met the burden of pleading punitive damages by alleging that Fisher defamed Via either intentionally, or so recklessly or negligently as to evince a conscious disregard of Via's rights.

**ARGUMENT**

**I. Via is Permitted to Raise Her Post-Litigation Retaliation Claim for the First Time in District Court**

Defendants together argue that Via is barred from raising in federal court her retaliation claim—which first arose in August 2017, after Via had exhausted her administrative remedies and then filed her initial claim in this court for violation of the ADA—because Via did not first exhaust

her administrative remedies with the EEOC or its designee with respect to her retaliation claim. Defendants misstate the law.

In *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), the Fourth Circuit followed all other circuit courts in ruling that "a plaintiff may raise [a] retaliation claim for the first time in federal court." In so ruling, the Fourth Circuit adopted the reasoning of the Fifth and Seventh Circuits to the effect that retaliation for filing an initial charge of discrimination with the EEOC essentially "grows out of" or "relates to" the initial charge, and is not therefore required to be part of a fresh charge before the EEOC. *Id.* The Fourth Circuit articulated "practical concerns" that, requiring a plaintiff to renew charges after administrative remedies had failed, would not serve the purpose of the exhaustion requirement. *Id*.

Here, as in *Nealon*, no statutory purpose is served by dismissing Via's retaliation claim for her not having exhausted her administrative remedies with the EEOC on that claim. Indeed, Via's retaliation claim first arose after she had exhausted her EEOC remedies and had commenced an action in this court on the grounds that Defendants had discriminated against her on the basis of her disability. It would be anathema to Rule 1 of the Federal Rules of Civil Procedure, as well as to *Nealon* and its progeny, to dismiss Via's retaliation claim for the nominal purpose of allowing the EEOC first to evaluate whether, through its limited resources, Defendants and Via may reconcile on Via's retaliation claim. *See also Jones v. Calvert Group, Ltd*., 551 F.3d 297, 302-05 (4th Cir. 2009) (rejecting a narrow application of *Nealon*, and emphasizing that "practical concerns" drive the non-exhaustion rule).

## II. Via is Permitted to Assert Her Retaliation Claim Against Fisher Individually

Defendant Fisher argues that, as a matter of law, he cannot be liable in his individual capacity for having violated the anti-retaliation provisions of the ADA, liability which Congress extends to any "person":

> (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.
>
> (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.
>
> (c) Remedies and procedures. The remedies and procedures available under sections 107, 203, and 308 of this Act [42 USCS §§ 12117, 12133, 12188] shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III [42 USCS §§ 12111 et seq., 12131 et seq., 12181 et seq.], respectively.

42 U.S.C. §12203. In *Baird v. Rose,* the Fourth Circuit provided the general rule that, because Section 12203 refers to Title VII as the source of remedies available for violation of Section 12203, and Title VII does not authorize a remedy against individuals who are not "employers" under Title VII, the ADA does not impose liability for violation of its anti-retaliation provisions on anyone who is not an "employer" within the meaning of Title VII. *Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (endorsing the *Baird* conclusion but explaining that it is "arguably contrary to a literal reading of Section 12203(a), "where the phrase '[n]o person shall' suggests the possibility of individual liability").

But *Baird* begs the question whether Fisher is an "employer" within the meaning of Title VII. In *Paroline v. Unisys Corp.*, the Fourth Circuit determined that an individual supervisor with certain delegated authority can qualify as an employer under Title VII:

> An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. The supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions. Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes.

*Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989) (citations omitted), *vacated in part on other grounds*, 900 F.2d 27 (1990). The Fourth Circuit's subsequent ruling in *Lissau v. Southern Food Service, Inc.* is not to the contrary. In that case, the Fourth Circuit, without over-ruling *Paroline*, held only that "individual *supervisors* are not liable under Title VII" on the grounds that "the language of Title VII and . . . its remedial scheme seem[] so plainly tied to employer, rather than individual, liability. *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) (emphasis added). *Lissau* and *Paroline* allow Via to prove at trial that Fisher, through his ownership, control, and domination of CCA, and his actual involvement in the hiring, management, and firing of Via, is an "employer" within the meaning of Title VII to whom liability for the anti-retaliatory provisions of the ADA attaches. Via has alleged sufficient facts regarding Fisher's status as an "employer" to avoid dismissal of Fisher from Count II of her Amended Complaint. *See* Compl. ¶ 4 (alleging that "Fisher dominated the policy making and decision-making processes at CCA, and was the sole decision maker with respect to all actions attributed to CCA").

## III. The Complaint States a Valid Claim of Defamation *Per Se*

### A. Legal Standard for Defamation *Per Se*

Under Virginia law, the elements of defamation are "(1) publication (2) of an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013). In order to be actionable, a statement must be both false and defamatory. *Id.* at 481.

The requirement of falsity incudes a requirement that the statement sued upon be one of fact, rather than opinion. *See id.* "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion. Furthermore, speech that does not contain a provably false factual connotation is generally considered pure expression of opinion." *Id.* (citations and quotation marks omitted). The question of whether a statement is one of fact or opinion is one of law, to be decided by the court. *Id.* at 482.

In determining whether a statement is one of fact or opinion, courts must consider that a claim for defamation does not rest merely on the defendant's statements themselves, but also on "any implications, inferences, or insinuations that <u>reasonably could be drawn</u> from each statement." *Webb v. Virginian-Pilot Media Co.*, 287 Va. 84, 89 (2014) (emphasis in original). "In determining whether the words and statements complained of . . . are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Id.* Thus, a statement is actionable if it has a "provably false factual connotation," even if the statement is couched in the language of opinion. *See Cashion v. Smith*, 286 Va. 327, 336 (2013).

In order to be defamatory, a statement must carry a "defamatory 'sting.'" *Schaecher v. Bouffault*, 290 Va. 83, 92 (2015). A statement with the requisite "sting" has a tendency "to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace

upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* "Language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole'" does not carry the requisite "sting," but an imputation that the plaintiff committed a "reprehensible crime" does. *Id.* At 92, 95.

When the plaintiff in a defamation action is a private individual, and not a public figure, she may satisfy the intent element by pleading and proving that the defendant either knew the statement to be false, "or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985).

> At common law, defamatory statements that are actionable *per se* include:
>
> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
>
> (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society.
>
> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
>
> (4) Those which prejudice such person in his or her profession or trade.

*Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006). A plaintiff who proves defamation *per se* is entitled to "recover compensatory damages for injury to reputation, humiliation, and embarrassment without demonstrating any financial loss." *Id.* at 713-714.

### B. The Complaint Pleads Specific Defamatory Statements

Fisher argues that the Complaint is defective because it fails to specifically identify Fisher's alleged defamatory statements. Def. Mem. at 11 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556-56 (2007); Fed. R. Civ. P. 8). *Twombly* merely requires that a complaint contain sufficient factual allegations "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"; a complaint "does not need detailed factual allegations" in order to survive a motion to dismiss. 550 U.S. at 555. Similarly, Rule 8 merely requires that a complaint contain a "short and plain statement of the claim."

Fisher seeks to impose a requirement that Via's complaint specifically label which statements Via alleges to be defamatory. Neither *Twombly* nor Rule 8 imposes such a requirement. Virginia law does require that a complaint asserting defamation set forth "the exact words" comprising the actionable statements. *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (2003). Virginia law also requires that additional details, such as the time and place of the defamatory statement and the identities of the maker and recipient of the statement, either be included in the pleading itself or a bill of particulars filed later. *Id.* Via's complaint satisfies all of these requirements by alleging that Fisher made statements to Alfred Jeffries Marsh ("Marsh") on August 28, 2017, falsely accusing Via of committing arson on CCA's printing facility. Compl. ¶¶ 36-51.

### C. Via Does Not Rely on Fisher's Statements Regarding Via's Work Performance

Fisher argues that his statement that Via "kept doing work that I told her not to do," Compl. ¶ 45, is not actionable. Via agrees. Via does not contend that this statement was defamatory. The statement was included in the Amended Complaint because it forms a part of the full and accurate account of the conversation between Fisher and Marsh in which Fisher defamed Via by falsely accusing her of arson.

**D. Fisher's Statements, Taken as a Whole, Imply a Provably False Factual Proposition, and are Therefore Actionable**

Fisher's sole argument that the Amended Complaint fails to state a cause of action with respect to his false allegation of arson against Via is that Fisher's statements were non-actionable expressions of opinion. But "expressions of 'opinion' may often imply an assertion of objective fact . . . simply couching . . . statements in terms of opinion does not dispel these implications." *Raytheon Tech Servs. Co. v. Hyland*, 273 Va. 292, 304 (2007) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)) (citations omitted). Accordingly, the law declines to "create a wholesale defamation exemption for anything that might be labeled 'opinion,' instead holding that opinions may be actionable where they 'imply an assertion' of objective fact." *Id.* (citations omitted). As the Virginia Supreme Court explained in *Schaecher*, "If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." 290 Va. at 103-04 (quoting *Milkovich*, 497 U.S. at 18-19).

In this case, Fisher stated that he had "reason to believe" that Via committed arson against CCA. Compl. ¶ 44. Like the statement of "opinion" that "Jones is a liar," Fisher's statement implied that Fisher had knowledge of facts leading to the conclusion that Via committed arson. Indeed, Fisher's statement went beyond merely stating an "opinion" that Via caused the fire at CCA; the words "reason to believe" constituted an explicit assertion that Fisher possessed evidence to support his claim of arson.

Courts do not consider a speaker's alleged defamatory statements in isolation. "[T]he context of an alleged defamatory statement within the speech as a whole are factors to consider when deciding if a challenged statement is one of fact or opinion." *Fuste*, 265 Va. at 133. Here, Fisher's other statements provide context that reinforces the conclusion that Fisher's accusation of arson was a statement of fact. Fisher's speech to Marsh had the tone of a legal argument, with

9

Fisher stating that Via had motive and opportunity to commit the crime. *See* Compl. ¶¶ 44 (describing Via as "disgruntled"), 45 (stating that Via was litigating against Fisher and "had ample opportunity" to set the fire), 51 (stating again that Via "had ample opportunity" and that she "holds a grudge" against Fisher). Moreover, Fisher's statement that he was "on my way to meet with fire investigators" implied that Fisher was about to lodge a formal charge again Via with the authorities. *See id.* at ¶ 41. The overall impression created by Fisher's speech to Marsh was that Fisher was asserting as a matter of fact that Via committed arson, not that Fisher was making mere "casual statements regarding his own opinions." Def. Mem. At 16.

### E. The Complaint Contains Sufficient Allegations to Support a Claim for Punitive Damages for Defamation

Under Virginia law, punitive damages are recoverable when the defendant acted with "misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others." *Doe v. Isaacs*, 265 Va. 531, 536 (2003). Via has alleged ample facts to raise a plausible inference that Fisher acted with the requisite intent to justify punitive damages.

Fisher's statement that he had "reason to believe" Via started the fire and that Via "had ample opportunity" to do so, coupled with the assertion that Fisher was "on my way to meet with fire investigators," implied that Fisher had concrete evidence that Via had committed arson and was about to lodge a formal charge with the authorities. *See* Compl. ¶¶ 41, 44-45. In reality, Via did not "have ample opportunity" to start the fire. Via will prove at trial that she was nowhere near CCA's facility when the fire started, and that even a cursory investigation on Fisher's part would have established as much. Fisher's accusations were therefore either knowingly false or made with reckless disregard for their truth or falsity. In essence, Fisher accused Via of arson—a serious criminal allegation with the ability to render Via an outcast in her community and cripple

10

her ability to find future employment—based on nothing more than the fact that he was angry at Via for suing him.

Defendants argue that the fact that Fisher did not mention Via by name undercuts any inference of malice. To the contrary, the circumstances of Fisher's interaction with Marsh heighten the inference. When Marsh made it clear to Fisher that he knew Fisher's statements referred to Via, Fisher could have simply stopped talking about Via. If he had done so, the inference of malice would be weaker, though not absent. But Fisher instead doubled down, reiterating that Via "had ample opportunity" to start the fire and held a grudge against Fisher. *Id.* at ¶ 51. Fisher's continuation of his allegations after Marsh made it clear that he knew Fisher was referring to Via ratified all of Fisher's previous statements about Via. They also showed a conscious decision by Fisher to disregard Via's rights by spreading false criminal allegations about Via.

## CONCLUSION

For the foregoing reasons, Via respectfully requests that the Court deny Defendants' Partial Motion to Dismiss.

Dated: November 1, 2017

Respectfully submitted,

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB 77791)
**WILSON LAW PLC**
2 South Main Street, Suite 409
Harrisonburg, Virginia 22802
Phone: (540) 430-0122
Email: robert@thewilsonlaw.com

Mitchell J. Rotbert
(admitted *pro hac vice*)
8937 Shady Grove Court
Gaithersburg, Maryland 20877
Phone: (240) 600-6467
Fax: (888)913-2307
Email: mitch@rotbertlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2017, I filed a true copy the foregoing through the CM/ECF system, which generated a Notice of Electronic Filing (NEF) to all counsel of record.

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB 77791)
**WILSON LAW PLC**
2 South Main Street, Suite 409
Harrisonburg, Virginia 22802
Phone: (540) 430-0122
Email: robert@thewilsonlaw.com