CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 6 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SANTA MARIE VIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:17CV00047 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| COMMUNICATIONS CORPORATION ) | |
| OF AMERICA, INC. and STEVEN R. ) | By: Hon. Glen E. Conrad |
| FISHER, ) | Senior United States District Judge |
| ) | |
| Defendants. ) | |

Santa Marie Via filed this action against Communications Corporation of America, Inc. (CCA) and Steven R. Fisher, asserting claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213, and Virginia law. The case is presently before the court on the defendants' partial motion to dismiss the second amended complaint. For the reasons set forth below, the motion will be granted in part and denied in part.

## Background

The following factual allegations, taken from the second amended complaint, are accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

CCA is a Virginia corporation engaged in the business of producing and issuing mass mailing campaigns. Fisher is the president of CCA. He maintains final decisionmaking authority over the hiring and firing of the company's managerial employees.

Via and her wife, S. Gail Morris, are former employees of CCA. Via began working for CCA in 1983 and eventually held several managerial roles. Morris most recently served as a data processing manager.

In February of 2016, Via was diagnosed with fibromyalgia and major depressive disorder. Her rheumatologist recommended that she take between one and three months off from work to address her symptoms. By letter dated February 25, 2016, CCA granted Via twelve weeks of leave under the Family and Medical Leave Act (FMLA). The letter indicated that Via was expected to return to work on May 9, 2016.

While on medical leave, Via responded to all of CCA's requests for updates on her conditions. Via advised Fisher that she wanted to eventually return to work. Fisher assured Via that her position would remain available even if she were unable to return immediately following the expiration of her FMLA leave.

On April 26, 2016, Via's psychologist opined that she would not be ready to return to work on May 9, 2016. That same day, the psychologist issued a notice to that effect. On May 3, 2016, Via's family physician issued a similar notice. Both notices recommended that Via remain on medical leave for an additional eight-week period.

On May 6, 2016, Via met with Fisher and Kelli Drumgoole, CCA's human resources director. Via advised them that her health care providers had recommended that she remain on leave through the beginning of July. At the conclusion of the meeting, Fisher hugged Via and told her that "'it will all work out.'" 2d Am. Compl. ¶ 26. Neither Fisher nor Drumgoole suggested that taking additional leave would place Via's job in jeopardy.

On May 12, 2016, Fisher sent Via a registered letter terminating her employment. The letter indicated that CCA was unable to hold Via's position following the expiration of her FMLA leave and that her employment would be terminated effective May 16, 2016.

On or about October 26, 2016, Via filed a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). "Via's charge alleged disability discrimination in the failure of Defendants, or either of them, to engage in an interactive process on a good faith basis to determine reasonable accommodations to enable Via to resume her work and in Defendants' ultimate failure to provide reasonable accommodation to Via." Id. ¶ 34.

On July 17, 2017, Via filed the instant action against CCA and Fisher. Via's original complaint asserted a single count of disability discrimination under the ADA. See Compl. 10, Dkt. No. 1.

On August 26, 2017, Via and Morris attended an all-day social event. Upon returning home that night, Morris received a frantic call from one of her crew members, Luis Yrupailla, who reported that a fire had erupted at CCA's printing plant in Boston, Virginia. Morris told Yrupailla that she would come to the plant right away. Before leaving, Morris called Mitzi Mills, CCA's director of production. 2d Am. Compl. ¶ 45. Mills told Morris that she would meet her at the plant.

Morris arrived at the plant around the same time as Mills and her husband, Nathan See, who worked for CCA as a machine technician. Yrupailla advised Morris that he and other employees began to smell smoke while working in the data processing area of the plant. Yrupailla followed the smell and found a fire burning in an enclosed machine shop that CCA had recently constructed in the middle of the facility. Yrupailla's efforts to extinguish the fire were

3

unsuccessful and the responding fire departments were unable to contain the fire. The plant ultimately burned to the ground.

After speaking with See at the scene of the fire and reviewing mechanical drawings of the plant, the chief of the Culpeper County Fire Department determined that the fire had erupted in a heating, ventilation, and air conditioning (HVAC) unit on the roof of the plant, directly above the machine shop. The fire caused the roof to collapse and ultimately spread to the area below. See advised the fire chief that the HVAC unit had not been working properly for approximately two weeks.

Fisher subsequently arrived at the scene of the fire and spoke with many of the employees present. "By not later than sundown [that day], Fisher understood that the fire that consumed the CCA facility had commenced in an HVAC unit, known by CCA to be in disrepair, located on the roof of the facility." Id. ¶ 63.

The next morning, Fisher entered the Boston General Store and spoke to another customer, Alfred Marsh, and the store's owner. Their conversation eventually turned to the fire:

> The conversation began when Fisher responded to the following question from the store owner: "Do you know what caused the fire?"
>
> Fisher replied: "I think it is arson. I am on my way to meet with fire investigators now, this morning."
>
> Fisher then advised Marsh that Fisher was looking for a building in the Culpeper Industrial Park in Brandy Station to move "his printing business," and that Brandy Station is closer than Boston to Dulles airport.
>
> Marsh, now understanding that he was speaking to Steve Fisher, said to Fisher: "I smelled electrical smoke." Marsh's house was fogged in on the night of the fire with smoke from the fire.
>
> Fisher replied: "I have reason to believe that a disgruntled employee that I had dismissed is responsible for the fire."

4

> Fisher continued: "She is litigating with me and had ample opportunity to cause the fire. She kept doing work that I told her not to do. And that eventually caused me to dismiss her. I feel bad for her, but . . . then I found out that her family owns a restaurant in Culpeper at the corner of Route 15 and 3.
>
> Marsh replied to Fisher: "You mean you're talking about Sandy Via?"
>
> Marsh has known Sandy Via and her family for nearly 50 years. Marsh knew that Via works for or owns her family restaurant at the corner of Route 15 and 3 in Culpeper, the only restaurant at that corner.
>
> Fisher looked at Marsh, astonished, and asked: "Is she a friend of yours?"
>
> Marsh replied: "Yes, Sandy and her family are friends."
>
> Fisher then said: "Well, maybe I shouldn't have said anything."
>
> But then Fisher continued: "I think she had ample opportunity, and I think that she holds a grudge against me because the last time I saw her she flipped me the bird."

Id. ¶¶ 66–77.

That same day, a local newspaper published a story regarding the fire. Fisher indicated during an interview that his team was already working on a plan to rebuild the printing plant. Fisher also noted that "CCA's hundreds of employees could 'be retained' during the rebuilding process via a 'government' safety net." Id. ¶ 78.

On September 2, 2017, the defendants terminated Morris' employment. Morris was one of only two managers who were dismissed following the fire. Via maintains that the defendants "knew and intended that Morris' termination would cause continued financial and emotional hardship" and that the decision was an act of "retaliation . . . related to Via's initial EEOC charge and to this lawsuit." Id. ¶¶ 81, 97.

Via filed an amended complaint on October 4, 2017. Based on the events that transpired following the fire, Via added a claim for retaliation in violation of the ADA and a claim for defamation per se.

The defendants responded to the amended complaint by filing a partial motion to dismiss. The court held a hearing on the motion via teleconference on February 22, 2018. At the conclusion of the hearing, the court permitted Via to file a second amended complaint.

The case is now before the court on the defendants' partial motion to dismiss the second amended complaint. The motion has been fully briefed and is ripe for review.

## Standards of Review

The defendants' motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Dismissal for lack of subject matter jurisdiction is appropriate "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation and internal quotation marks omitted).

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007) (citation and internal quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I. Motion to Dismiss under Rule 12(b)(1)

The ADA incorporates the enforcement provisions of Title VII of the Civil Rights Act of 1964, including the requirement that a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC before filing suit in federal court. Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012). The EEOC charge determines the scope of a plaintiff's right to file a federal lawsuit. Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [ADA] lawsuit." Id. (citation and internal quotation marks omitted). A plaintiff's failure to exhaust her administrative remedies deprives the court of subject matter jurisdiction over a claim. Id.

It is undisputed that Via met the jurisdictional exhaustion requirement with respect to her claim of discrimination under the ADA. The parties instead dispute whether Via's retaliation claim is subject to dismissal for failure to exhaust her administrative remedies. The parties' disagreement centers on the United States Court of Appeals for the Fourth Circuit's decision in Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992), in which the Court recognized an exception to the exhaustion requirement for certain retaliation claims. In particular, the Fourth Circuit held that a plaintiff may raise for the first time in federal court the claim that her employer retaliated against

7

her for filing an EEOC charge. Nealon, 958 F.2d at 590. The Court explained that this exception is "the inevitable corollary of [the] generally acceptable principle that the scope of a . . . lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Id. (internal quotation marks omitted). The Court reasoned that a claim of retaliation for the filing of an EEOC charge of discrimination is "like or reasonably related to . . . and growing out of such allegations." Id. (internal quotation marks omitted). The Court also noted that "practical concerns" supported the exception in that a plaintiff who has already been retaliated against for filing an EEOC charge would naturally be reluctant to file a separate charge, possibly bringing about further retaliation. Id.

The defendants contend that the Nealon exception applies only to cases in which the alleged retaliatory act occurred while the charge of discrimination was still pending before the EEOC. See Br. in Supp. of Def.'s Partial Mot. to Dismiss 8, Dkt. No. 27 ("Plaintiff was issued her right to sue letter on April 18, 2017, and her EEOC charge was no longer pending as of that date. The events on which Plaintiff bases her retaliation claim, that is, the termination of her wife's employment, did not occur until September 1, 2017. Accordingly, the relation back rule does not apply."). To support this argument, the defendants rely on the Fourth Circuit's unpublished decision in Brown v. Runyon, No. 96-2230, 1998 U.S. App. LEXIS 3237 (4th Cir. 1998), which seemingly construed Nealon to impose a pendency requirement. See Brown, 1998 U.S. App. LEXIS 3237, at *10 (observing that "Nealon's 'relation back' rule presupposes both that a retaliation count in a Title VII lawsuit be 'related to' and have 'grown out of the EEO charge while the administrative charge remained pending," and that "[i]f either predicate condition is

8

lacking, the rule cannot operate to overcome a plaintiff's failure to have exhausted administrative remedies").

The problem with the defendants' reliance on Brown is that subsequent Fourth Circuit precedent makes clear that the exception recognized in Nealon has no pendency requirement. The defendant in Jones v. Calvert Group advanced the very same argument as CCA and Fisher—"that the Nealon rule applies only to cases in which the alleged retaliatory act occurred during the pendency of the administrative investigation of the prior EEOC charge." Jones, 551 F.3d at 302. The defendant maintained that such position was supported by the plain language of Nealon, particularly the Court's explanation that the rule it was adopting was the "'inevitable corollary' of the rule that 'the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" Id. The Fourth Circuit ultimately rejected the defendant's argument, explaining as follows:

> Regardless of whether Calvert presents persuasive arguments that the rule we adopted in Nealon should have included a pendency requirement, the language of the opinion is clear that the rule we actually adopted in fact included no such requirement. Nor would such a requirement have fit within our reasoning in that case, in which we explained that a plaintiff should be excused from exhausting claims alleging retaliation for the filing of a previous EEOC charge largely because such a plaintiff would be expected to be gun shy about incurring further retaliation after an additional EEOC charge and because a second conciliation could not be expected to be any more fruitful than the first. Indeed, Gottlieb v. Tulane University of Louisiana, 809 F.2d 278 (5th Cir. 1987), on which we relied in Nealon, involved a retaliation claim that arose after the pendency of the EEOC charge. See Gottlieb, 809 F.2d at 280 (noting that alleged retaliation occurred after Title VII action had been filed).

Id. (emphasis in original) (additional citations omitted). Accordingly, the Fourth Circuit concluded that "the rule in Nealon contains no pendency requirement." Id. at 303. In light of

9

this clear precedent, the court finds the defendants' contrary argument based on Brown to be without merit.

In her second amended complaint, Via claims that CCA fired Morris in order to retaliate against Via for seeking redress under the ADA.[1] See 2d Am. Compl. ¶¶ 94–95. Via further emphasizes that the "allegations of retaliation are related to Via's initial EEOC charge and to this lawsuit." Id. ¶¶ 94, 97. As indicated above, the Nealon rule permits a plaintiff to "raise for the first time in federal court the claim that her employer retaliated against her for filing with the EEOC." Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014) (citing Nealon, 958 F.2d at 590). Because Via satisfied the jurisdictional exhaustion requirement with respect to her discrimination claim under the ADA, "it follows that the [court has] jurisdiction over her related [ADA] retaliation claim." Id. at 417. Accordingly, the retaliation claim is not subject to dismissal under Rule 12(b)(1).

## II. Motion to Dismiss under Rule 12(b)(6)

The defendants have also moved to dismiss certain aspects of Via's second amended complaint under Rule 12(b)(6). Specifically, they seek dismissal of the claim for retaliation against Fisher, the request for compensatory and punitive damages for alleged retaliation, the claim for defamation per se, and the related request for punitive damages. The court will address each in turn.

---

[1] The defendants appear to concede that Via's allegations state a claim for retaliation against CCA. In Thompson v. North American Stainless, LP, 562 U.S. 170 (2011), the complaint alleged that an employer fired an employee's fiancé, who worked for the same company, after the employee filed a charge of sex discrimination with the EEOC. The Supreme Court had "little difficulty" concluding that if the facts alleged were true, then the firing of the employee's fiancé violated the antiretaliation provision of Title VII. 562 U.S. at 174. Because the antiretaliation provision of the ADA is similarly worded to that of Title VII, courts have held that "the Court's reasoning in Thompson applies equally to the ADA." Morgan v. Napolitano, 988 F. Supp. 2d 1162, 1178 (E.D. Cal. 2013); see also Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 391 (4th Cir. 2001) (applying Title VII retaliation standards to ADA retaliation claim).

10

## A. Fisher is not individually liable for retaliation.

The defendants first argue that Fisher cannot be held individually liable for retaliation under the ADA.[2] The court agrees with the defendants that the Fourth Circuit's decision in Baird v. Rose, 192 F.3d 462 (4th Cir. 1999) is dispositive of this issue. In Baird, the Fourth Circuit held that private individuals cannot be held personally liable for retaliation under the ADA. 192 F.3d at 471. In reaching this decision, the Fourth Circuit noted that it had "expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'" Id. at 472 (citing Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998) (holding that supervisors cannot be held liable in their individual capacities under Title VII because they do not fit within the definition of an employer)). "Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions," the Fourth Circuit concluded that "the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA." Id.

Since Baird was decided, the Fourth Circuit and district courts therein have repeatedly observed that the ADA does not allow a plaintiff to pursue claims against supervisors and other individual officers or employees. See, e.g., Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) (affirming the district court's conclusion that Title VII and the ADA do not provide for causes of actions against individual defendants) (citing Baird, 192 F.3d at 472); Mattison v. Md. Transit Admin., No. 1:15CV01627, 2016 U.S. Dist. LEXIS 65361, at *14 (D. Md. May 18, 2016) ("It is well established in this circuit that a supervisory employee is not liable for violations of the ADA, regardless of whether he is sued in his official or individual capacity.") (citing Allen v.

---

[2] Fisher is not named as a defendant to the ADA discrimination claim asserted in Count I of the second amended complaint.

11

College of William & Mary, 245 F. Supp. 2d 777, 786–87 (E.D. Va. 2003)); Silvious v. RR Donnelley & Sons, No. 5:10CV00116, 2011 U.S. Dist. LEXIS 13979, at *2 (W.D. Va. Feb. 20, 2011) ("It is well-established that individual employees are not subject to liability under the ADA, and that only employers may be held liable under this statute."). Consistent with the foregoing decisions, the court concludes that Fisher is not an "employer" for purposes of the ADA and is therefore not subject to liability for the alleged violation of its antiretaliation provision.[3] Accordingly, the retaliation claim against Fisher will be dismissed.

### B. Plaintiff cannot recover compensatory and punitive damages for retaliation.

To the extent Via seeks to recover compensatory and punitive damages for retaliation in violation of the ADA, the court concludes that such request is subject to dismissal. The Fourth Circuit has held that compensatory and punitive damages are "unavailable" for alleged violations of the ADA's antiretaliation provision. Rhoads v. Fed. Deposit Ins. Corp., 94 F. App'x 187, 188 (4th Cir. 2004) (citing Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004)). Although Rhoads is an unpublished decision, the court finds the reasoning of Kramer, on which it relies, persuasive. See Kramer, 355 F.3d at 965 (explaining that the plain language of 42 U.S.C. § 1981a permits recovery of compensatory and punitive damages only for those claims listed therein, which do not include claims of retaliation under 42 U.S.C. § 12203); see also Alvarado v.

---

[3] Under Title VII and the ADA, an "employer" is defined in pertinent part as "'a person engaged in an industry affecting commerce who has fifteen or more employees.'" Baird, 192 F.3d at 472 (quoting 42 U.S.C. § 2000e-5(b)); see also 42 U.S.C. § 12111(5)(A). Relying on the Fourth Circuit's decision in Paroline v. Unisys Corp., 879 F.2d 100 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1990) (en banc), Via argues that an individual qualifies as an "employer" under Title VII, and therefore the ADA, if he serves in a supervisory position and exercises control over the plaintiff's hiring or firing. As indicated above, however, the Fourth Circuit's subsequent decision in Lissau makes clear that "supervisors are not liable in their individual capacities for Title VII violations." Lissau, 159 F.3d at 180. Accordingly, "Paroline's holding as to supervisor liability under Title VII—although never formally overruled—is not controlling." Taylor v. Anne Arundel Cty., No. 1:12CV02468, 2013 U.S. Dist. LEXIS 116049, at *8 n.15 (D. Md. Aug. 15, 2013); see also King v. McMillan, No. 7:05CV00521, 2006 U.S. Dist. LEXIS 51859, at *3 n.1 (W.D. Va. July 28, 2006) ("Although the Fourth Circuit has not expressly overruled Paroline, other courts have held that the Fourth Circuit has impliedly overruled Paroline. This court believes it is compelled to do so, as well.").

Cajun Operating Co., 588 F.3d 1261, 1268 (9th Cir. 2009) (agreeing with Kramer that "the plain and unambiguous provisions of 42 U.S.C. § 1981a limit the availability of compensatory and punitive damages to those specific ADA claims listed"). Accordingly, the court will dismiss the request for compensatory and punitive damages set forth in Count II.

C. **The second amended complaint states a claim for defamation per se.**

In Count III of the second amended complaint, Via claims that Fisher defamed her by making statements indicating that she had committed arson at CCA. Via contends that such statements are defamatory per se.

To state a claim for defamation under Virginia law, a plaintiff must plausibly show that the defendant (1) published (2) an actionable statement with (3) the requisite intent. See Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (citing Gazette, Inc. v. Harris, 325 S.E.2d 713 (Va. 1985)). "To be 'actionable,' the statement must be not only false, but also defamatory, that is, it must 'tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Id. (quoting Restatement (Second) of Torts § 559).

Certain statements are considered defamatory per se under Virginia law, including: (1) "[t]hose which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished"; (2) "[t]hose which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment"; and (3) "[t]hose which prejudice such person in his or her profession or trade." Tronfeld v. Nationwide Mut. Ins. Co., 636 S.E.2d 447, 449–50 (Va. 2006) (quoting Fleming v. Moore, 275 S.E.2d 632, 635 (Va.

13

1981)). For such statements, Virginia law presumes that the plaintiff suffered actual damage to her reputation and, therefore, no proof of damages is required. Fleming, 275 S.E.2d at 636.

A defamatory statement may be made in direct terms or by inference, insinuation, or implication. Perk v. Vector Res. Grp., 485 S.E.2d 140, 144 (Va. 1997). Although "pure expressions of opinion" cannot ordinarily serve as the basis for a defamation claim, "factual statements made to support or justify an opinion can." WJLA-TV v. Levin, 564 S.E.2d 383, 392 (Va. 2002). Accordingly, statements that are verifiably false or contain "provably false factual connotations" may be defamatory. Id. The issue of whether a statement is opinion or fact is determined by the court as a matter of law, as is the issue of whether a statement is defamatory. See Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 (Va. 1998); Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985).

In moving to dismiss Via's defamation claim, the defendants first argue that Via "fails to identify which statements she claims are defamatory per se." Def.'s Br. Supp. Mot. to Dismiss 14, Dkt. No. 27. Upon review of the second amended complaint, the court disagrees. Contrary to the defendants' assertion, the pleading does not merely state that "Fisher uttered one or more false statements of or concerning Via." Id. (internal quotation marks omitted). Instead, Via specifically alleges that Fisher "uttered to Marsh and to the owner of the General Store in Boston one or more false statements that Via had committed arson at CCA." 2d Am. Comp. ¶ 103 (emphasis added). Because the second amended complaint makes clear that the defamation claim is based on "Fisher's false accusation of arson against Via," Id. ¶ 104, it satisfies the federal pleading requirements. See Fed. R. Civ. P. 8(a)(2) (providing that a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief"); see also Southprint, Inc. v. H3, Inc., 208 F. App'x 249, 254 n.2 (4th Cir. 2006) (noting that defamation

claims are "not subject to heightened pleading requirements" in federal court); Wuchenich v. Shenandoah Mem'l Hosp., No. 99-1273, 2000 U.S. App. LEXIS 1157, at *45 (4th Cir. May 22, 2000) (same).

The defendants next argue that the statements at issue are not defamatory per se. In particular, the defendants challenge Via's assertion that the false accusation of arson imputed an unfitness to perform the duties of employment and prejudiced Via in her profession or trade.[4] The defendants emphasize that to fall within these categories of defamation per se, "the words must contain an imputation that is 'necessarily hurtful' in its effect upon plaintiff's business" and must affect her in her "particular trade or occupation." Fleming, 275 S.E.2d at 636 (quoting James v. Haymes, 168 S.E. 333, 336 (1933)). Although the defendants' recitation of the law is correct, the court is unable to conclude that the statements at issue would not prejudice Via in her profession. Succinctly stated, the accusation that Via committed arson at the facility where she previously worked as a manager "would be an obtrusive stumbling block to [her] gaining other employment." Haigh v. Matsushita Electric Corp., 676 F. Supp. 1332, 1339 (E.D Va. 1987). Accordingly, the court concludes that the statements suggesting that Via was responsible for the fire support a plausible claim for defamation per se.

The court is also unpersuaded by the defendants' argument that Fisher's statements regarding the fire are nonactionable opinions. In determining whether a statement is one of fact or opinion, the court "must consider the statement as a whole." Hyland v. Raytheon Tech. Servs. Co., 670 S.E.2d 746, 750 (Va. 2009). While "pure expressions of opinion . . . cannot normally

---

[4] Neither side addresses whether the statements at issue fit within the first category of defamation per se. Nonetheless, the court notes that, in other contexts, arson has been held to be an offense involving moral turpitude. See, e.g., Ruiz v. Holder, 446 F. App'x 68, 69 (9th Cir. 2011) (holding in the immigration context that arson "necessarily involves an act of baseness or depravity contrary to accepted moral standards and is thus a crime involving moral turpitude") (citations and internal quotation marks omitted).

15

form the basis of an action for defamation," WLJA-TV, 564 S.E.2d at 392 (internal quotation marks omitted), the Supreme Court "has specifically declined to hold that statements of opinion are categorically excluded as the basis for an action for defamation," Id. (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18–21 (1990)). As the Supreme Court explained in Milkovich:

> If a speaker says, "In my opinion John is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases the opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

497 U.S. at 18–19.

Assuming the truth of Via's allegations, as the court must do at this stage of the proceedings, the court concludes that the statements at issue are not pure expressions of opinion. By indicating that he had "reason to believe" that Via was "responsible for the fire" and that she "had ample opportunity" to cause it, Fisher implied that he had knowledge of facts that would lead to the conclusion that Via committed arson. Under existing precedent, "[s]tatements clearly implying the existence of facts are actionable as defamation." Swengler v. ITT Corp. Electro-Optical Prods. Div., 993 F.2d 1063, 1071 (4th Cir. 1993). Accordingly, Count III is not subject to dismissal under Rule 12(b)(6).

D.  **The second amended complaint states a claim for punitive damages under Virginia law.**

The defendants' final challenge is to the sufficiency of the allegations to support an award of punitive damages for defamation. "[T]o recover punitive damages in a defamation case, the plaintiff must prove actual malice by 'clear and convincing evidence that [the defendant] either knew the statements he made were false at the time he made them, or that he made them with

16

reckless disregard for their truth.'" Gov't Micro Res., Inc. v. Jackson, 624 S.E.2d 63, 70 (Va. 2006) (emphasis in original) (quoting Ingles v. Dively, 435 S.E.2d 641, 646 (Va. 1993)). A plaintiff who seeks to recover punitive damages "can prevail by establishing either circumstance by clear and convincing evidence." Id.

Via's second amended complaint contains factual allegations that, if proven, would support a claim for punitive damages against Fisher. Via alleges that the fire chief determined that the fire started in an HVAC unit on the roof of the facility, which had not been working properly for approximately two weeks. Via further alleges that employees advised Fisher of the source of the fire when he arrived on the scene, and that "[b]y not later than sundown on Sunday, August 27, 2017, Fisher understood that the fire . . . had commenced in an HVAC unit, known by CCA to be in disrepair." 2d Am. Compl. ¶ 63. Despite what he knew about the source of the fire, Fisher indicated that he had reason to believe that Via was responsible for starting it and that she had ample opportunity to do so. See id. ¶¶ 70–77. These allegations, accepted as true, are sufficient to make plausible Via's assertion that Fisher made the accusations against Via "with knowledge that they were false" or "with reckless disregard for their truth or falsity." Id. ¶ 105. Accordingly, the request for punitive damages will not be dismissed at this time.

## Conclusion

For the reasons stated, the defendants' partial motion to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 26th day of April, 2018.

/s/ Glen Conrad
Senior United States District Judge

17